UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARK FRIEDLAND, PRISCILLA FRIEDLAND
and JACOB FRIEDLAND,

    PLAINTIFFS,

V.    96-8626

Case No. 96-8626 - Civ- HURLEY

EDWARD A. FEAVER, as Secretary of the
FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES, f/k/a DEPARTMENT OF
HEALTH AND REHABILITATIVE SERVICES,
DENNIS JOHNSON, individually and officially,
PARENT CHILD CENTER, and ALICE
McDONALD,

    Defendants.
_____/



## MARK DANIEL FRIEDLAND's AMENDED COMPLAINT

Plaintiff, MARK DANIEL FRIEDLAND, sues the Defendants, EDWARD A. FEAVER, Secretary of the FLORIDA DEPARTMENT OF HUMAN AND REHABILITATIVE SERVICES OF FLORIDA, DENNIS JOHNSON, PARENT CHILD CENTER, ALICE McDONALD and allege:

### JURISDICTION

1. This is an action brought pursuant to 1983 and 1985 of Title 42, United States Code deprivation of rights, privileges, and immunities secured by the United States Constitution. Based on the provisions of Title 28, U.S.C. 1331 and 1335 venue is properly lodged in the District of Florida in that the cause of action arose in this district.



PARTIES

2. Plaintiff, MARK DANIEL FRIEDLAND, is a citizen of the United States who resided in Palm Beach County during the time of the events contained in this Amended Complaint.

3. Defendent, Edward A. Feaver, is Secretary of the FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES f/k/a/ DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES {hereinafter "HRS"} is sued in his official capacity.

4. Defendant, DENNIS JOHNSON, is an individual who is employed as a child protection worker by HRS. Johnson is sued individually and officially.

5. Defendant, PARENT CHILD CENTER {hereinafter "PCC"} is a subcontractor of HRS which derives revenue from the State by performing duties on its behalf.

6. Defendant, ALICE McDONALD, is an individual performing duties for the State under contract, and for PCC.

COUNT 1 ( Civil Rights)

7) Plaintiff, Mark Friedland, brings this action for damages based on the denial and interference with parental rights by the State of Florida and its agents. The actions of the defendants violated the plaintiff's statutory and constitutional rights and were conducted under the "color of law."

8) In January of 1992, the plaintiffs resided in Wellington Florida at Guilford Circle.

9) During the first week of January 1992, Priscilla Friedland was in Palms West Hospital in Royal Palm Beach with Shane Clark and Jacob Friedland visiting their mother at the hospital.

10 ) While plaintiff, Priscilla Friedland was in the hospital, HRS protective service investigator,

(2)

Dennis Johnson came to Palms West Hospital and placed the children in shelter care.

11) Plaintiff, Mark Daniel Friedland, was at home in Wellington less than two miles from the hospital at the Guilford Circle residence that was known to Dennis Johnson.

12) HRS violated Fl. Statute 39.4051 and its own guidelines by submitting false affadavits reporting that the whereabouts of the father, Mark Daniel Friedland, were unknown and that there were no other relatives in the State of Florida.

13) In fact, the children had grandmothers in Florida; plaintiff, Mark Friedland's mother, resided in Palm Beach.

14) DENNIS JOHNSON entered into an agreement with Patricia Adams, sister of the plaintiff, on Jan. 10, 1992 to take custody of Shane Clark and Jacob Friedland. The aunt lived in Lincoln, Mass.

15) No notice was provided to the plaintiff, Mark Friedland, pursuant to Fl St. 404-405. Nor was there any attempt to make "reasonable efforts" to reunify the family pursuant to statute or HRS regulations.

16) The allegation in the Petition for Depedency against plaintiff, Mark Daniel Friedland was that he traveled to Disneyland in Orlando during December 1991 with Shane Clark and Jacob Friedland and left Simon Clark, 17 years of age, "home alone" in Wellington with about fifty dollars for the weekend.

17) Throughout the entire dependency proceeding there never was a serious allegation of child abuse or neglect against the father, Mark Daniel Friedland.

18) In March 1992, the Circuit Court encouraged the plaintiffs to enter into a voluntary treatment plan with the idea of reunifying the family in June of 1992 after the children's school year was over.

19) After it became clear that, despite the Friedlands complying with a voluntary program, the family reunification promised for June 1992 was not going to happen, plaintiffs moved for a trial date on the dependency action.

20) Despite full compliance with the voluntary program and a favorable home study in Naples, HRS illegally continued blocking family reunification requiring a trial on Aug. 10, 1992.

21) The Friedlands traveled from Naples on Aug.10, 1992 and Crystal Yates claimed that the case was continued because the children were transported by HRS to the Adams family residence at the Glades in Massachussetts illegally and without notice to the Friedlands.

22) At the Aug.10, 1992 trial, the court heard evidence and ordered the reunification of the family for Sept.20, 1992.

23) Defendant, ALICE MCDONALD, at the Aug.10, 1992 trial requested family therapy to ease the reunification of the family.

24) Attempts by the Friedlands to enter into family therapy were rebuked by Alice McDonald. By November of 1992, she wrote the Friedlands that the court-ordered family therapy would pose a "conflict of interest."

25) Prior to the hearing in September, Alice McDonald, acting on behalf of the PCC with the knowledge of HRS submitted ex parte to the Court a purported psychiatric evaluation reportedly prepared by Dr. Alexandro Villalobos, a West Palm Beach psychiatrist.

26) The purpose and content of the Dr. Villalobos report was to discredit the plaintiffs and to advise the Court against the planned reunification of the family set for Sept 20, 1992.

27) During Aug. , 1992, defendants McDonald, HRS, Sam Aurelio and Michelle Hankey, of the Juvenile Advocacy Project filed pleadings, letters and had private meetings with Hon. Harold Cohen all designed to frustrate the reunification of the family.

(4)

28) An emergency petition was served upon the Friedlands in North Naples, Florida by John Seifert of Orsino investigations.

29) Mr. Seifert went throughout the Friedlands' neighborhood and interviewed people claiming that he was taking evidence against the Friedlands as an investigator for Judge Cohen. Mr. Seifert claimed that the Friedlands were reputed child abusers.

30) The emergency petition filed in Aug. of 1992 claimed that Priscilla beat Jacob Friedland at a visit in July of 1992 in Naples.

31) At trial, the only testimony presented by the State showed "a pillow fight" between Jacob and his mother.( see detailed findings of Judge Stevenson May 23, 1993).

32) On Sept.20, 1992, the court, without taking evidence, rescinded the reunification order, mandated psychological evaluations of the parents, and severely restricted visitation rights.

33) Defendant, Sam Aurelio, guardian ad litem, was to supervise the visits on alternate Saturdays.

34) From Sept. 20, 1992 to May 1993, defendant Sam Aurelio, intentionally frustrated the court-ordered visitation by conspiring with Alice McDonald and HRS and systematically making himself unavailable for visits.

35) Prior to trial upon application of the plaintiffs, Hon Judge Matthew Stevenson removed Sam Aurelio as the guardian ad litem for his failure to provide visitation which later he claimed was against his religious and moral beliefs as a Seventh Day Adventist.

36) At the two week trial in May of 1993, the Court dismissed the dependency petition in a directed verdict holding that the State failed to make a prima facie case in support of its actions.

37) The court also decided that there was no basis for separating the children from the parents, even at the inception of the action.

(5)

38) At the conclusion of the May 1993 trial, before the Friedlands received the court order dismissing the dependency petition, HRS assisted Patricia Adams in transporting Shane Clark to Massachusetts.

39) Instead of issuing a pick-up order for Shane Clark, HRS conspired with Patricia Adams in bringing a fraudulent guardianship action in Massachusetts

40) In support of their attempt to evade the court order dismissing the dependency action, HRS conspired with Patricia Adams, who instituted a guardianship action claiming the Friedlands whereabouts were unknown and failed to reveal that the Florida court had dismissed a dependency action based in part on frivolous allegations provided by Patricia Adams, who was deposed and testified in the May, 1993 dependency trial.

41) HRS, in July of 1994, secured an order from a new trial judge that it had no jurisdiction to order the return of Shane Clark.

42) Plaintiffs appealed that order

43) The Fourth District Court of Appeals subsequently held that there was jurisdiction to order the return of Shane Clark.

44) On remand, the trial court ordered HRS officials to issue a pick-up order of Shane Clark in Massachussetts and to institute proceedings under the Uniform Child Custody Act and the Uniform Child Kidnapping Act.

45) HRS officials refused to issue a pick-up order on Shane Clark or take any action whatsoever to honor the court's order.

46) The defendants all acted under color of state law, and in concert, to deprive Mark Daniel Friedland of his constitutional and statutory rights to be a parent to his children.

47) As a direct and proximate result of the actions of defendants, jointly and severally, individuals acting under color of state law deprived plaintiff,

Mark Daniel Friedland of his parental rights. Such individuals knew or should have known that their actions were contrary to law and in direct violation of court orders, rules, regulations and statutes.

COUNT 11  (INVASION OF PRIVACY)

Plaintiff, Mark Daniel Friedland, incorporates by reference allegations 1-47 of the First Count and adds the following allegations:

48) During the operative period of this litigation, the State of Florida kept an Abuse Registry which recorded charges of abuse or neglect against parents.

49) Despite the dismissal of the dependency petition in May of 1993, defendant HRS still maintains an erroneous entry in its records compiled in the Abuse Registry that Judge Cohen in Oct. 1992 found the plaintiff, Mark Daniel Friedland, guilty of child abuse or neglect.

50) No such finding was ever made, yet no correction has been made in the Abuse Registry despite complaints by the plaintiff, Mark Friedland.

51) In the middle of March 1997, an Ina Steidel, agent of HRS, came to the Friedland's home at 16891 98th Way Jupiter, Fl and sought to interview Jacob Friedland

52) Ms. Steidel claimed that an anonymous caller reported a case of Domestic Violence at the home in Jupiter, and she needed to interview Jacob Friedland

53) Mr. and Mrs. Friedland denied any incident of domestic violence and initially asked Ms. Steidel to leave.

54) Ms. Steidel threatened to pull Jacob Friedland out of class at Duncan Middle School if she could not interview him at home.

56) Plaintiffs permitted the interview of their son Jacob at home to avoid the embarassment of having their son interrogated at school.

(7)

57) After hearing Jacob deny any fights between his parents, Ina Steidel, the very next day, interrupted Jacob's school work by pulling him out of class and questioning at length about these frivolous, anonymous accusations that he refuted a day earlier in his home.

58) Plaintiff, Mark Friedland, called Ms. Steidel and her supervisor and bitterly complained about the harassment brought by HRS in retaliation for his filing this lawsuit.

59) Plaintiff, Mark Friedland, maintains that these activities were designed to invade his personal and family privacy.

Count 111 ( Intentional Infliction of Emotional Distress).

Plaintiff incorporates by reference allegations (1-59) and adds:

60) During a deposition of Alice McDonald in the dependency case, the plaintiff, Mark D. Friedland, learned that from Feb 1992- April 1993 Alice McDonald kept notes of her alleged "therapy sessions" with Shane Clark and Jacob Friedland.

61) Pursuant to Florida Statute 39:465, no child is to receive extended therapy without parental approval.

62) Here the parents were not consulted prior or during the children's therapy sessions nor was there any review of the activities of Alice McDonald or P.C.C.

63) Hon. Matthew Stevenson, prior to trial, appointed Dr. Steven Alexander as a court expert in the dependency trial.

64) Both in his deposition and at trial, Dr.Alexander made the following findings about the McDonald "therapy sessions:"

    (A) The therapy sessions were designed to rehearse the children what to say in court to help the lawyers get a finding of dependency.

(B)   The therapy sessions were used to defeat the statutory goal of reunification of the family.

(c)   The therapy sessions were calculated to turn the children against the parents.

65)   Dr. Alexander also reviewed the Sept. 1992 letter prepared and signed by Alice McDonald for Dr. Alexandro Villalobus and stated that the submission of a psychiatric evaluation ex parte to a judge without proper testing and counseling of the children  is highly irresponsible and negligent.

66)   The submission of the purported psychiatric evaluation to Judge Harold Cohen ex parte in conjunction with the filing of frivolous motions to block the reunification of the family  was an intentional effort by the defendants to break up the Friedland family.

67)   The actions of the defendants to press a frivolous dependency case against plaintiff, Mark Friedland, was an intentional effort to inflict emotional distress.

68)   Plaintiff, Mark Friedland, has been damaged by the reckless and illegal actions of defendant that should shock the conscience of this community by its outrageous nature.

WHEREFORE, MARK DANIEL FRIEDLAND, who has been caused to suffer great emotional and mental distress as a result of the Defendants' actions to deprive him of his children demands the following relief:

   a)   Recovery of compensatory and punitive damages from defendants in their individual and official capacities.

      b)   An award of costs and fees pursuant to 42 U.S.C 1988

      c)   All other appropriate relief this court deems fit.

(9)

                                                  Respectfully submitted

                                                  Mark Daniel Friedland
                                                  510 E. Ann St.
                                                  Punta Gorda, Fl 33950
                                                  Tel. 941 -505 9174

## CERTIFICATION

Copies furnished to:

                                                  Mark Daniel Friedland

    G. Ware Cornell Jr.
    PO Box 14633
    Ft. Luderdale, Fl. 33302

    Shamim A. Mirza
    43 Pine Tree Pl.
    Tequesta, Fl 33469

    James  O Williams Jr.
    One Clearlake Centre Suite 1102
    250 Australian Ave. South
    West Palm Beach, Fl. 3340;

    Maxine Ryan

    Office of Attorney General
    Civil Litigation Division
    110 Tower 110 SE sixth st.
    Ft. Lauderdale, Fl  33301